## COURT OF SPECIAL SESSIONS — CITY OF NEW YORK — APPELLATE PART — FIRST JUDICIAL DEPARTMENT.

### March 20, 1923.

### THE PEOPLE v. IRVING FEIN.

TRIAL.

Where it appears that a defendant, although not represented by counsel on his arraignment, demands an immediate trial, he cannot be heard to complain on the appeal that the trial city magistrate erred in concluding the trial, notwithstanding that the defendant claims that he has witnesses who are not in court and who have not been subpoenaed.

APPEAL from a judgment of conviction after trial had in a City Magistrate's Court, Traffic Court, Borough of Manhattan, on a charge of violating subdivision 1, section 17, article 2, chapter 24, of the Code of Ordinances of the City of New York (Reckless Driving), and a sentence of imprisonment for fifteen days in the City Prison.

Before Hons. FREDERIC KERNOCHAN, Presiding Justice; JOHN J. FRESCHI and CLARENCE EDWARDS, Justices.

Appearances:

*Goetz & Jacoby* (*Mr. Arnold Jacoby,* of counsel), for the appellant.

*Joab H. Banton, Esq., District Attorney* (*Mr. Edwin P. Kilroe,* of counsel), for the respondent.

FRESCHI, J.:

City Magistrate House advised this appellant upon his arraignment of his rights, among them, to have an adjournment to procure counsel or witnesses, as required by statute, whereupon the defendant stated that he was ready to proceed at once with the trial of his case.

Where it appears that a defendant, although not represented by counsel upon his arraignment, demands an immediate trial, he cannot be heard to complain on the appeal that the trial city magistrate erred in concluding the trial, notwithstanding that the defendant claims that he has witnesses who are not in court and who have not been subpoenaed. The record here shows this colloquy between the defendant and the magistrate: " Q. Are there any witnesses you want to call? " To which the defendant replied:. " A. Well I have witnesses, but it seems as if they only lied to me. They said they would come, but I fail to see them." At the close of the entire case the defendant said, " That is my case."

Appellant claims that the verdict rendered is against the weight of evidence. In my opinion the evidence amply sustains the verdict reached by the learned magistrate, who, in my judgment, gave the defendant a fair, painstaking and impartial trial.

I have considered the other points raised by the counsel for the appellant and I find no errors to warrant this appellate court in disturbing the conviction, which should be in all respects affirmed. (See also the oral opinion of City Magistrate House, the trial judge, which is hereto appended.)

I conclude that the sentence imposed is not excessive and the defendant committed thereunder.

EDWARDS and KERNOCHAN, JJ., vote to affirm the judgment in all respects.

Judgment of conviction in all respects affirmed.

CITY MAGISTRATE HOUSE (p. 28, S. M.) :

The complaint in this case is framed under subdivision 1, section 17, chapter 24, article 2, of the Code of Ordinances of the City of New York. The ordinance is very broad in its language. It says: " No person shall operate a motor vehicle recklessly or negligently or at a speed or in a manner so as to endanger (or) to be likely to endanger the life, limb or property of any person on the highway or street." All that is necessary to adjudge a defendant guilty, if the testimony warrants such judgment, is to find that he at the time was operating his vehicle negligently. The appellate courts are not all agreed on the proposition as to whether recklessly and negligently operating are one and the same thing. Some appellate courts of some jurisdictions say that there is no distinction or difference and some appellate courts in other jurisdictions are inclined to the opinion that a little more proof is necessary to convict a person of reckless operating than would be required to convict him of negligently operating. If there is any probative force in the testimony offered by the People, I have no hesitation in saying that the defendant at the time not only operated his motor vehicle negligently but he operated it in a reckless manner.

Now, let's see what the proof in this case is. The complaining witness testifies that he was proceeding north on Fifth avenue at about 9:30 in the morning on the 3d of January, 1923; that there was a Fifth avenue bus just ahead of him as they were approaching Tenth street. He was alongside of

this bus when he says the bus came to a sudden stop and he saw a motor truck which this defendant was operating coming out of East Tenth street, going in a westerly direction, swing around the head of the bus which had stopped and struck his machine, his private car which he was driving north, and dragged it away over to the northwest corner of Fifth avenue and Tenth street. That was away over on the west side.

Now, Paul G. Schelenz was called as a witness for the People. He is employed by the Fifth Avenue Coach Co., or the Fifth Avenue Bus Co., as it is commonly called, and as I recall his testimony he has been employed by them for four and a half years. He says that he was driving a bus for the Fifth Avenue Coach Co. and about twenty feet ahead of him was another Fifth Avenue coach that was proceeding north as he was proceeding north. He says that he saw the bus ahead of him suddenly stop, and that he noticed a truck coming out of Tenth street, traveling in a westerly direction, that it was coming fast, that it shot around the Fifth Avenue bus that had come to a sudden stop and collided with the vehicle operated by the complaining witness and dragged it over to the west side. Now, this witness said that he had been driving motor vehicles for a number of years, that he owned one of his own that he drove that was equipped with a speedometer, and that he has watched the speedometer in order to find out the rate of speed at which he was going and that he has frequently observed other motor vehicles that were traveling about and he has taken notice of the rate of speed at which they were going. I asked him whether this truck driven by the defendant was going fast or slow, and he said very fast. I then asked him what in his opinion or judgment the rate of speed was and he said about twenty miles. Evidently this truck operated by this defendant must have been going at a very high rate of speed, because this witness says that he stopped his bus, got off and went to the other bus, thinking perhaps it had been damaged in some way and he would render such service as he could, and finding that

it was not he was about to return to his own bus when he saw this defendant and said to him, "Where did you think you were going? Did you think you were going to a fire?"

Now, Police Officer McCarren comes on the stand and he was stationed at the time of this accident at Ninth street and Fifth avenue, just a block south. He says he was regulating traffic at that time and at 9:30 in the morning just before the collision occurred traffic in his neighborhood was proceeding north and south, and although there was no police officer stationed at Fifth avenue and Tenth street, the block north of him, Officer McCarren says that when traffic is moving north and south on Fifth avenue that is an indication to any operator who is in Tenth street wishing to go either in an easterly or a westerly direction that east- and west-bound traffic is shut off. Officer McCarren says that he heard a crash and he went up to Tenth street and Fifth avenue and found that the truck which had been proceeding in a westerly direction and the vehicle of the complaining witness which had been proceeding in a northerly direction were away over on the west side of Fifth avenue, up against this northwest curb. Officer McCarren says that the front right wheel of the complainant's car and the front left wheel of the truck were locked together, and he says that after these cars had been separated he saw where there had been a skid or a drag, he says, at least of seven feet, which was very perceptible, and he says that in talking with this defendant he called his attention to that fact.

Now, there is a very significant fact in this case to my mind. It has some considerable bearing on the probative force of the testimony given by the defendant. The officer says when he got up there there were a number of people around and he asked who was driving this truck, and that somebody said, pointing to a man, "That man walking down the street," and that the officer went after this defendant and stopped him and brought him back, so that at the time that the officer got up there or just before he reached the scene of the accident this

defendant, according to the testimony of the officer, was walking away.

Now, we have the testimony of Mr. Niederman, in the theatrical business, a witness who to my mind gave a very clear statement of what occurred. He says that he was driving south on Fifth avenue and as he approached the northerly intersection of Fifth avenue and Tenth street he noticed a Fifth Avenue bus coming north and he also noticed the vehicle operated by the complaining witness proceeding north, that they were about abreast. He says suddenly the truck operated by this defendant shot out of Tenth street, going in a westerly direction at a very high rate of speed, that the Fifth Avenue bus came to a sudden stop, but because of the bus shutting off the range of vision of the complaining witness the complaining witness could not see the truck as it first shot out and that he proceeded, when this truck, going at a very high rate of speed, collided with the complaining witness's motor vehicle and dragged it over to the northwest side of Fifth avenue and Tenth street. Mr. Neiderman says that as he saw this truck shooting out of Tenth street at a high rate of speed he was forced to put on his brakes suddenly and bring his motor vehicle to a quick and sudden stop, otherwise he would have gone into these two vehicles that had been tangled together.

Now, Mr. Niederman says that he has been operating a motor vehicle for a long time, that he has watched the rate of speed at which his motor vehicle was going because he has a speedometer attached to it, that he has observed other motor vehicles traveling on the highways and taken some notice of the rate of speed at which they were going, and he fixes the rate of speed at which defendant's vehicle was going at between twenty and twenty-five miles an hour.

Now, the law is well settled on this proposition. Not only do the appellate courts of this State say but the appellate courts of every State in the Union and the federal courts, wherever this question has been raised, have laid down this rule of law,

that an adult person, of ordinary intelligence and average powers of observation, may without any other qualification whatsoever express an opinion as to the rate of speed at which a motor vehicle was being driven at a given time and place, and that such person need not be an expert. It is not necessary to cite any authorities on that proposition, because the proposition is so well established.

Now, Mr. Chamberlain in his work says the same thing, and Mr. Blakemore and Mr. Huddy and Mr. Berry, in their works governing automobiles, say the same thing. I will call attention to what Mr. Chamberlain says. In the third volume of his work, at pages 2765, 2766, he says this: "An estimate of the speed with which a motor vehicle or other objects proceed may properly be received from one qualified to give it. Often it is probably the only reliable evidence available. Its use, therefore, is in a measure forced upon judicial administration. An adult of reasonable intelligence and ordinary experience who has observed the passing of an automobile just before an accident is presumptively able without proof or further qualification to give his opinion as to the speed of an automobile." Now, Mr. Blakemore, in his work on the Law of Automobiles, pages 1063 and 1064, says: "The experience of non-expert witnesses will enable them to form a reasonably accurate judgment as to the speed of a passing machine and nothing beyond that is obliged or should be required." I think one of the best statements of this rule of law is found in Dugan v. Arthurs (230 Pa. St. 299). There the court says, speaking of non-expert witnesses: "Their competency to express an opinion did not require them to possess technical or scientific knowledge." An intelligent person, having a knowledge of time and distnce, is capable of forming an opinion as to the speed of a passing railroad train, a street car or an automobile. His conclusion is the result of a comparison with the speed of other moving objects of which he has knowledge by constant experience. There is no reason why such a witness should not be

permitted to testify to the speed of an automobile than to the speed of a carriage or other vehicle which travels the public highways. His everyday experience gives him sufficient knowledge to form an intelligent judgment upon the subject. He simply compared the speed of one moving object with that of another with which he is made familiar by the daily affairs of life. Aside from any other sufficient reason, the necessity of the case requires that such testimony be admitted in trials involving the wanton and dangerous speeding of automobiles. To hold otherwise and to compel the production of expert testimony in such cases would in almost every instance defeat the ends of justice. An expert witness or exact measurement by a speedometer is seldom available to a party who has been injured by the reckless conduct of a person operating such a machine, and to require such evidence in order to sustain an action would be unreasonable and work palpable injustice."

Now, the defendant took the stand and what does his testimony amount to? A. He says he was crossing there about eight miles an hour, that at the time there was no traffic in sight that was going north and no traffic in sight that was proceeding south when he started to cross, and he says the complaining witness didn't seem to be paying much attention to what he was doing and drove right along, and in order to prevent a collision he swung his car or his truck, and that the complaining witness came right along and collided with him; in other words, this defendant insists that so far as this accident is concerned that the complaining witness practically drove right into his truck. Now, it isn't always what witnesses say that courts must consider in order to determine what the situation is. Courts have got to look at the witnesses, observe their demeanor, their appearance and their manner of giving testimony. Now, this complaining witness is engaged in quite a responsible business in this city. That fact alone probably would not mean very much, but in observing this complaining witness, nothing that has occurred here to-day in his manner

or his demeanor could indicate him as a person who would without any rhyme or reason just run into a two and a half or three-ton truck. Now, that is the defense offered here by this defendant. Now, the officer testified that he has been in the Traffic Division something like seven years, therefore we can assume that he knows something about how traffic operates in the city, and he says that just before he heard this crash, and it was the crash that called his attention to this accident, that traffic was moving north and south, and although there was no police officer stationed at Tenth street and Fifth avenue at the time of this accident, that the fact that north- and south-bound traffic was proceeding was an indication to any person who was in Tenth street, and wanted to go either east or west, that east- and west-bound traffic at that particular time had stopped. It is a well-known fact that officers who are regulating traffic can take care of two blocks.

Now, I am satisfied that this defendant was traveling at a high rate of speed with a great big heavy truck, and that he was not only negligent in the manner in which he operated his motor vehicle at that time, but was reckless. The ordinances of the City of New York provide this, that all things being equal, vehicles proceeding north and south have the right of way over vehicles going east and west, and where an accident occurs and it is established that the person responsible for that accident was violating some other regulation of traffic, that may be taken into consideration in passing on the question as to whether he was guilty of reckless or negligent driving in causing the accident which took place.

Now, the complaining witness says that a part of his vehicle just before the collision was a little over the center of Tenth street at Fifth avenue. He says that the bus which came to a sudden stop was about up to the center. Under these circumstances, it was the business of this defendant to have waited until north- and south-bound traffic had been shut off and east

and west had been permitted to go, or at least not to attempt to cross when traffic was approaching going north and south.

Now, I have listened to the testimony in this case, given it the weight, care and consideration to which it is entitled. The evidence satisfies me that this defendant is guilty and I find him guilty.